## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| GUAM POWER AUTHORITY, DB INSURANCE CO., LTD., f/k/a Dongbu Insurance Company, and CHUBB INSURANCE SINGAPORE LIMITED, f/k/a ACE Insurance Limited, as subrogees of Guam Power Authority<br><br>Plaintiff,<br><br>v.<br><br>KOREA EAST-WEST POWER CO., LTD., PM CONTROL SYSTEMS PTE LTD., JOHN DOE COMPANIES 1-20, and JOHN DOE INSURANCE COMPANIES 1-20,<br><br>Defendant. | Case No. CV0825-18<br><br>DECISION AND ORDER |

### INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena, III on August 2, 2019 on submission of Korea East-West Power Co., LTD.'s ("KEWP") Motion to Disqualify Denenberg Tuffley PLLC and The Thomas McKee Tarpley Law Firm ("Motion to Disqualify"). Plaintiffs, DB Insurance Co., LTD ("DB Insurance") and Chubb Insurance Singapore Limited ("Chubb"), are represented by Attorneys Thomas M. Tarpley and Denenberg Tuffley, PLLC. Defendant KEWP is represented by Attorney Rodney J. Jacob and Morrison & Foerster (Singapore) LLP. Defendant PM Control Systems PTE ("PM Control") is represented by Attorney Patrick G.

Civille. After considering the arguments of the parties and the applicable law, the Court now issues its Decision and Order denying Defendant KEWP's Motion to Disqualify.

## BACKGROUND

In September 2009, Guam Power Authority (GPA) issued an invitation for bid entitled, "Invitation For Multi-Step Bid, No GPA-047-09, Performance Management Contract For the Guam Power Authority Cabras Units #3 and #4 Slow Speed Diesel Power Plant." GPA and KEWP subsequently entered into an agreement for KEWP to manage, operate, maintain, and repair the Cabras Slow Speed Diesel Plant in Piti, Guam. In May 2010, GPA and KEWP executed a "Performance Management Contract for the Guam Power Authority Cabras Unit 3 & 4" ("PMC"), outlining the various obligations owed by each party in their respective performances of the contract. Of particular relevance here is Section 27.2, which requires GPA and KEWP to engage in informal dispute resolution prior to filing suit in court.

On August 31, 2015, an explosion and fire occurred which significantly damaged the GPA power plant. Following the explosion, GPA submitted claims to its various insurers. One insurer was Dongbu Insurance Company (now known as DB Insurance). Another insurer was ACE Insurance Limited (now known as Chubb). Payment was eventually made on GPA's insurance claims. Dongbu Insurance, in issuing payment to GPA, entered into a Settlement Agreement with GPA. Part of the Settlement Agreement authorized Dongbu to sue for reimbursement of the monies paid out in GPA's name. Following the Settlement Agreement, Plaintiffs, now acting in GPA's name pursuant to the agreement, contacted KEWP through counsel. KEWP, acknowledging that counsel does not act on behalf of GPA, refused to meet with Plaintiffs, indicating they will only meet with GPA.

After more unsuccessful attempts to communicate with KEWP, Plaintiffs filed suit in August 2018. Plaintiffs filed a First Amended Complaint ("FAC") on February 7, 2019. Plaintiffs filed a Motion for Leave to File Second Amended Complaint and Jury Demand ("Motion for SAC") on April 7, 2019. KEWP filed two motions on April 15, 2019: the Motion to Disqualify and a Motion to Stay. Plaintiffs filed oppositions to KEWP's motions on May 13, 2019. KEWP filed its Reply in Support of Motion to Disqualify ("Reply") on May 28, 2019. Relevant to this Decision and Order are the Motion to Disqualify, Plaintiff's opposition to the Motion to Disqualify ("Opposition"), and KEWP's Reply. After hearing the arguments of the parties on August 2, 2019, the Court took the matter under advisement.

## DISCUSSION

### A. Denenberg and Tarpley do not represent GPA.

Important in this litigation are the principles of subrogation, the principles upon which the plaintiffs bring their claims. Equitable subrogation "allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance." *Guam Hous. & Urban Renewal Auth. v. Pac. Superior Enters. Corp.*, 2001 Guam 8 ¶ 21 (quoting *Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996)). The District Court of Guam has explained that while there are differences between an assignment and subrogation, the result of the two are the same: "the transfer of a claim from one party to another." *FHP, Inc. v. San Agustin*, DCA 84-0051A, 1985 WL 56595, at \*3 (D. Guam 1985) (citing *Fifield Manor v. Finston*, 354 P.2d 1073, 1078 (Cal. 1960)).

Plaintiffs point out three principles of subrogation which are of great relevance to this case. Opposition at 11. The Court sees no distinction between the first and second principles asserted. As such, the Court finds two principles of subrogation applicable here.

First, an insurer (as subrogee) "stands in the shoes" of the insured (as subrogor). *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, 710 F.3d 946, 957 (9th Cir. 2013) (citing *Am. Sur. Co. of N.Y. v. Bethlehem Nat'l Bank of Bethlehem*, 314 U.S. 314, 317 (1941). The insurer is entitled to assert the rights of the insured, and the insurer, in turn, is subject to any defenses that could be asserted against the insured. *Am. Sur.*, 314 U.S. at 317. Plaintiffs cite *Westport Insurance Co. v. Altertec Energy Conservation, LLC*, 82 A.D.3d 1207 (N.Y. App. Div. 2011) for the proposition that a "claim against the insured for indemnification can simply be asserted against the insurer in the subrogation action." Opposition at 11. The Court reads this case as providing that an insurer may seek indemnification for the amounts paid to the insured from the party who caused the initial harm. *Westport*, 82 A.D.3d at 1210. While Plaintiffs' cited case does not support the specific proposition asserted, the Court still finds that a claim for indemnification, which can be asserted against the insured, can be asserted against the insurer in a subrogation action: "Any defense which the wrongdoer has against the insured is good against the insurer." *Royal Indem. Co. v. Sec. Truck Lines*, 27 Cal. Rptr. 858, 861 (Cal. Ct. App. 1963).

Second, insurers may assert claims in subrogation in the name of the insured, even though the insured has no interest or actual involvement in the case. *Holyoke Mut. Ins. Co. v. Concrete Equip., Inc.*, 384 So.2d 193 (Fla. Ct. App. 1981); *Seaside Resorts, Inc. v. Club Car, Inc.*, 416 S.E.2d 655, 665 (S.C. Ct. App. 1992); *Kentucky Nat'l Ins. Co. v. Gardner*, 6 S.W.3d 493, 499 (Tenn. Ct. App. 1999); *Prudential Prop. & Cas. Co. v. Dow Chevrolet-Olds, Inc.*, 10 S.W.3d 97, 100 (Tex. Ct. App. 1999).

Here, DB Insurance Co. and Chubb are pursuing subrogation claims on behalf of their insured, GPA. The Court finds that Denenberg and Tarpley represent DB Insurance Co. and Chubb as GPA's subrogors and that GPA is not an actual party in interest to this litigation.

KEWP argues Denenberg and Tarpley undoubtedly represent GPA because they (1) filed the FAC with claims for GPA's insurance deductibles and (2) filed their *pro hac vice* application indicating they represent GPA. Reply at 4. The Court disagrees.

The Court does not find it damaging to Plaintiffs' case that the FAC included claims for GPA's deductible. Plaintiffs, in filing their Motion for Leave to File the Second Amended Complaint, have tried to correct their mistakes in seeking GPA's deductible costs and further clarify their position in relation to GPA. The Court finds KEWP's assertions that Denenberg and Tarpley are now trying to abandon an alleged current client, GPA, in favor of other clients, DB Insurance and Chubb, meritless.

The Court also finds KEWP's argument that Denenberg and Tarpley's *pro hac vice* applications declare that they "have been retained as counsel for Plaintiff, Guam Power Authority," as evidence that Denenberg and Tarpley represent to GPA to be meritless. As explained above, principles of subrogation provide that insurers can sue in the name of its insured. This is the case here.

Fatal to KEWP's position is the fact that KEWP has twice acknowledged in writing that Denenberg and Tarpley do not represent GPA. In a letter dated April 30, 2018 from Lee Kyung-ro of KEWP to T.B. Denenberg, Mr. Kyung-ro writes, "EWP notes that Denenberg Tuffley represents Guam Power Authority's first-party insurers." Jacob Declaration, Exhibit G (Apr. 15, 2019). In a letter dated May 14, 2018 from Lee Kyung-ro of KEWP to Todd Denenberg, Mr. Kyung-ro writes, "We note that your firm does not act on behalf of Guam Power Authority." Jacob Declaration, Exhibit I. These letters, combined with the numerous other correspondences between Denenberg and Tarpley and KEWP point to one conclusion:

Denenberg and Tarpley have made it very clear from the beginning that they represent GPA's insurers, DB Insurance and Chubb, and KEWP has been fully apprised of this fact.

Therefore, the Court finds Denenberg and Tarpley do not represent GPA. GPA is a plaintiff only in name, and Denenberg and Tarpley do not represent GPA's actual interests in this matter. Denenberg and Tarpley represent GPA's insurers and subrogors, DB Insurance and Chubb.

**B.      KEWP does not have standing to bring its Motion to Disqualify.**

**1.      KEWP lacks third-party standing to bring its Motion to Disqualify.**

For the Court to address KEWP's arguments regarding disqualification, KEWP must demonstrate that it holds the requisite standing to bring its Motion to Disqualify. "Standing is a threshold jurisdictional matter." *Guam Image Consultants v. Guam Mem'l Hosp. Auth.*, 2004 Guam 15 ¶ 17 (citing *Brewer v. Lewis*, 989 F.2d 1021, 1025 (9th Cir. 1993)). "The requirements for Article III standing, necessary for any party to seek relief from a federal court, are that the party have suffered an 'injury in fact,' which is causally related to the conduct in issue and redressable by a favorable decision of the court." *Coyler v. Smith*, 50 F.Supp.2d 966, 968 (C.D. Cal. 1999) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The burden is on the party seeking relief to establish these 'irreducible constitutional minimum' elements with respect to the particular issues the party wishes to have decided." *Id.* (citing *Lujan*, 504 U.S. at 560-61).

Generally, "courts do not disqualify an attorney on grounds of conflict of interest unless the former client moves for disqualification." *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998). The Guam Supreme Court has not yet given authority for the Court to follow with

regards to the issue of standing to bring a motion for attorney disqualification. However, the Court finds the reasoning of *Coyler v. Smith* persuasive.

In its survey of the case law of other jurisdictions on this issue, the *Coyler* court concluded that the "majority view is that only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that current of the former client." F.Supp.2d at 969-71. *Coyler* found persuasive the authority from one of the leading cases for the majority view, *In re Yarn Processing Patent Validity Litigation*: "[t]o allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist." 530 F.2d 83, 90 (5th Cir. 1976).

Both the *Coyler* and the *In re Yarn Processing Patent* cases recognized exceptions to this rule. *Coyler* provides that a non-client may meet the Article III standing requirements "where the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims." F.Supp.2d at 971. Similarly, the court in the *In re Yarn Processing Patent* case held a narrow exception to the rule is when the conflict of interest is "manifest and glaring," confronting a court with "a plain duty to act." 530 F.2d at 89. Examples of such "manifest and glaring" breaches include when an attorney has changed sides during litigation, or if the interests of former clients are "open and obvious[ly]" adverse to the interests of new clients. *See, e.g., Porter v. Huber*, 68 F.Supp. 132 (W.D. Wash. 1946); *Empire Linotype Sch., Inc. v. United States*, 143 F.Supp. 627 (S.D.N.Y. 1956).

KEWP has not alleged it is a former client of Denenberg and Tarpley. As such, KEWP does not meet the general requirements for standing. However, KEWP contends the Court

should nevertheless find KEWP has standing to brings its motion on the grounds that the exceptions in *Coyler* and *In re Yarn Processing Patent*. Reply at 2. The Court disagrees.

KEWP introduces these principles in its Reply, but KEWP does not explain exactly how the alleged conflict is "manifest and glaring"[1] nor that the alleged conflict "so infects the litigation." Looking to the other portions of KEWP's Motion to Disqualify and its Reply, however, the Court is not convinced that KEWP has met this standard. KEWP has not alleged that Denenberg and Tarpley have changed sides during litigation. *See Porter*, 68 F.Supp. 132; *Empire Linotype Sch., Inc.*, 143 F.Supp. 627. KEWP seems to implicitly argue, through its various arguments in its Motion to Disqualify and Reply, that Denenberg and Tarpley's alleged conflict "so infects the litigation" requiring disqualification. The Court is not satisfied that KEWP has met its burden in arguing this. While KEWP's entire Motion to Disqualify alleges a conflict and that said conflict has somehow impacted KEWP's rights in this litigation, KEWP has not sufficiently explained exactly how the alleged conflict has prejudiced KEWP's rights. The Court will not make this link for KEWP; rather, it is KEWP's burden to explain this in order to satisfy standing requirements. *See Coyler*, 50 F.Supp.2d at 968. KEWP has failed to do so.

Therefore, KEWP has not sufficiently alleged third-party standing to bring its Motion to Disqualify.

**2.      KEWP lacks the "public interest" standing it asserts to bring its Motion to Disqualify.**

KEWP further argues "non-clients also have standing to object to a conflicted concurrent representation where the case involves a governmental entity." Reply at 3.

_____

[1] The Court acknowledges KEWP's arguments in its Motion to Stay regarding how a conflict of interests is present between GPA and its insurers. However, KEWP has not sufficiently explained how such conflicts are similar to those conflicts present in the *Porter* and the *Empire Linotype School* cases.

> The problem occurs . . . where decisions concerning the use of government resources and information are guided by private, rather than public, interests. In that situation, there is considerable risk that these decisions will be made improperly—in favor of private interests at the expense of the public interest. When government resources and information are used improperly in this manner, a private litigant opposing a party with access to governmental authority suffers an *unfair* disadvantage.

*Davis v. S. Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 673 (S.D. Fla. 1993) (emphasis in original). However, the *Davis* court also noted that this is a problem with "joint representation of [a] governmental and [a] private entity." *Id.* As explained above, the instant matter does not deal with joint representation of a governmental entity and a private entity. It has been established that Denenberg and Tarpley represent GPA's insurers, DB Insurance and Chubb, not GPA itself. KEWP further cites *Kessenich v. Commodity Futures Trading Commission* and *Black v. Missouri* in support of its proposition that the involvement of a governmental entity confers standing upon KEWP to move for disqualification of counsel. 684 F.2d 88 (D.C. Cir. 1982); 492 F.Supp. 848 (W.D. Mo. 1980). The Court finds these cases to be distinguishable from the facts in the instant matter.

In *Kessenich*, Paul Kessenich filed a complaint with the Commodity Futures Trading Commission ("CFTC"), addressing it to Clinton Burr, an attorney in the Division of Enforcement. 684 F.2d at 89. Kessenich alleged unlawful acts in connection with certain unauthorized transactions in commodity options on Kessenich's account with Rosenthal & Company ("Rosenthal"). *Id.* Rosenthal, after the filing of the complaint, replaced its prior legal counsel with its general counsel; Burr worked as Rosenthal's new general counsel. *Id.* Subsequently, Kessenich was awarded damages, and Rosenthal petitioned for review. *Id.* On a counter-petition, Kessenich sought disqualification of Burr as Rosenthal's general counsel on the basis that Burr was previously employed at the CFTC. *Id.* at 91. Here, the public interests are stake are not the same as those implicated in *Kessenich*: "Public confidence in the CFTC's

reparation procedures will be undercut if litigants must fear that the public officials who handle their case may one day oppose them in regard to the same matter." *Id.* at 98. The instant litigation bears no risk similar to the one in *Kessenich*.

In *Black*, the Kansas City Missouri School District ("KCMSD"), alongside some of the children attending the school, filed suit against the State of Missouri to litigate the right of school children to a public education free from discriminatory segregation. 492 F.Supp. at 852. However, the District Court realigned KCMSD as a party-defendant due to concerns that KCMSD could not be a fully effective advocate since the proceedings might reveal that KCMSD is the party responsible for the alleged segregative conditions. *Id.* at 853. After the realignment, crossing motions to disqualify counsel came forth. *Id.* The *Black* court stated, "where the interests of the public are so greatly implicated as they are in this case, the Court believes that 'third parties' such as the district defendants should be entitled to raise any apparent conflicts of interest which might undermine the validity of proceedings in this case." *Id.* at 861. However, *Black* dealt with issues of counsel for the government changing sides due to a realignment of sides; counsel for KCMSD, which represented both the school district and the children as plaintiffs, now represents KCMSD as a defendant, adverse to the children. Here, no such issue is present. The present case does not deal with attorneys changing sides. As such, the public interest concerns implicated in *Black* are not present here.

KEWP's Motion to Disqualify, while alleging third-party standing on the basis that the case involves a government entity, fails to address exactly what unfair advantage DB Insurance and Chubb are receiving and what public interests are being implicated and subverted. As explained in Part B(1), the burden is on KEWP to establish the constitutional requirements of standing. KEWP has failed to do so here.

The Courts finds KEWP has failed to establish the "public interest" standing alleged to move to disqualify Denenberg and Tarpley as counsel for the plaintiffs.

## C.     Denenberg and Tarpley's pro hac vice admission should not be revoked.

KEWP further requests the Court to revoke Denenberg and Tarpley's *pro hac vice* admission to represent Plaintiffs in this matter. KEWP cites Rule 8.01(d) of the Guam Rules Governing Admission to the Practice of Law, which provides:

> (3) Standard for Admission and Revocation of Admission. The courts and agencies of Guam have discretion as to whether to grant applications for admission pro hac vice. An application ordinarily should be granted unless the court or agency finds reason to believe that such admission:
>> (A) may be detrimental to the prompt, fair and efficient administration of justice,
>> (B) may be detrimental to legitimate interests of parties to the proceedings other than the client(s) the applicant proposes to represent,
>> (C) one or more of the clients the applicant proposes to represent may be at risk of receiving inadequate representation and cannot adequately appreciate that risk, or
>> (D) the applicant has engaged in such frequent appearances as to constitute regular practice in Guam.
>
> (4) Revocation of Admission. Admission to appear as counsel pro hac vice in a proceeding may be revoked for any of the reasons listed in Section 1(d)(iii) rule 8.01(D)(3) above.

KEWP provides various arguments for revocation of Denenberg and Tarpley's *pro hac vice* admission. The Court finds all of these arguments to be without merit.

### 1.     Denenberg and Tarpley have not acted with a lack of candor that would mandate revocation.

KEWP argues that because Denenberg and Tarpley alleged in their *pro hac vice* application that they have "been retained as counsel for Plaintiff, Guam Power Authority," Denenberg and Tarpley have perjured themselves. They also allege that Denenberg and Tarpley have held themselves out to be GPA's counsel. KEWP argues it is this lack of candor which mandates revocation of *pro hac vice* admission due to prejudice caused to KEWP. As explained

in Part A, Denenberg and Tarpley have made it abundantly clear throughout litigation that they do not represent GPA. The communications between Denenberg and Tarpley and KEWP make this clear. Further, subrogation law permits DB Insurance and Chubb to sue in GPA's name. The Court finds that this argument lacks merit.

### 2. Denenberg and Tarpley have not violated any laws of Guam.

KEWP next argues that Denenberg and Tarpley have not followed the mandatory pre-filing procedures required by Section 27.2 of the PMC: "Denenberg and Tarpley appear unaware of – or have ignored – these requirements and did nothing to ensure that GPA exhausted these procedures before filing suit." Motion to Disqualify at 15. KEWP contends that this failure is grounds for revocation of Denenberg and Tarpley's *pro hac vice* admission. KEWP grossly mischaracterizes the facts here. It is incontrovertible that Denenberg and Tarpley contacted KEWP in order to set up such a meeting prior to filing suit. KEWP fails to mention that it was KEWP's refusal to meet with Denenberg and Tarpley that caused the lack of a pre-filing meeting pursuant to the PMC. KEWP would have the Court find grounds for Denenberg and Tarpley's *pro hac vice* admission to be revoked based on its own refusal to meet with Denenberg and Tarpley. The Court will make no such finding.

KEWP further argues that Denenberg and Tarpley's failure to comply with the Guam Procurement Law creates grounds for revocation of their *pro hac vice* admission. However, the Court finds this law to be inapplicable to Plaintiffs: "This Section applies to controversies between the Territory and a contractor and which arise under, or by virtue of, a contract between them." 5 GCA § 5427(a). As explained in Part A, GPA is a not a party to this litigation; rather, GPA's involvement in this litigation is only in name as permitted by subrogation principles. The Court finds KEWP's argument here to be without merit.

**3.     Denenberg and Tarpley are not required to follow procedures inapplicable to them.**

KEWP lastly argues that Denenberg and Tarpley are barred from being GPA's counsel under the Guam Organic Act, 48 U.S.C.A. § 1421g(d)(1), and that Denenberg and Tarpley did not follow the appropriate procedures for GPA hiring outside counsel. These arguments are founded on the assertion that Denenberg and Tarpley represent GPA. As explained throughout this Decision and Order, Denenberg and Tarpley do not represent GPA; rather, they represent GPA's insurers. As such, KEWP's arguments fail for this flaw.

Perhaps the most fatal shortcomings of KEWP's arguments in support of revocation is the fact that KEWP has failed to explain exactly how any of these arguments, if true, constitute grounds for revocation of *pro hac vice* admission. Throughout the Motion to Disqualify, KEWP assert that Denenberg and Tarpley's actions have cause prejudice to both parties, raised questions as to the adequacy of representation of GPA, and severely hindered the prompt, fair, and efficient administration of justice.[2] However, there is no explanation as to how any of these actions create the resuscitated grounds for revocation under Rule 8.01(d).

It was incumbent upon KEWP to explain to the Court how each of these courses of action, when actually applicable, constitute grounds for revocation of Denenberg and Tarpley's *pro hac vice* admission. KEWP failed to meet that obligation.

Therefore, the Court finds insufficient grounds to revoke Denenberg and Tarpley's *pro hac vice* admission.

---

[2] *See* Motion to Disqualify at 15, 17 & 20 ("It is self-evident that this lack of diligence has caused prejudice to the other parties including EWP, prejudice to GPA, and has raised serious questions as to the adequacy of representation of GPA . . . as well as severely hindered the prompt, fair, and efficient administration of justice.") ("This course of action also caused prejudice to GPA, the other parties, including EWP, and severely hindered the prompt, fair, and efficient administration of justice.") ("Such a lack of diligence has caused prejudice to GPA, the other parties, including EWP, and has raised serious questions as to the adequacy of representation of GPA and severely hindered the prompt, fair, and efficient administration of justice.").

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Disqualify is **DENIED**. Denenberg and Tarpley do not represent GPA; rather, Denenberg and Tarpley represent GPA's insurers, DB Insurance and Chubb. KEWP lacks standing to bring its Motion to Disqualify. Further, KEWP lacks third-party standing and has not established the "public interest" standing it asserts in its Reply. Lastly, the Court has not found sufficient grounds to revoke Denenberg and Tarpley's *pro hac vice* admission.

**IT IS SO ORDERED** this 30th day of October, 2019.



_____
**HONORABLE ALBERTO C. LAMORENA III**
**Presiding Judge, Superior Court of Guam**

SERVICE VIA COURT BOX
I ac        rdge that a copy of the
            ereto was placed in the
            if:
TARPLEY, CALVO FISHER
CIVILLE
10 30 2019:
Deputy Clerk, Superior Court of Guam